Matter of Yegnukian v Kogan (2020 NY Slip Op 00602)





Matter of Yegnukian v Kogan


2020 NY Slip Op 00602


Decided on January 29, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 29, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
LEONARD B. AUSTIN
SYLVIA O. HINDS-RADIX
PAUL WOOTEN, JJ.


2019-01521
 (Docket Nos. V-14850-18, V-25146-18)

[*1]In the Matter of Grigor Yegnukian, appellant,
v
Julia Kogan, respondent.


Davidoff Hutcher & Citron LLP, New York, NY (Frank L. Perrone, Jr., of counsel), for appellant.
Goldweber Epstein LLP, New York, NY (Elyse S. Goldweber and Jacqueline M. Perez of counsel), for respondent.
Daniel M. Bauso, Jamaica, NY, attorney for the child.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Queens County (Craig Ramseur, Ct. Atty. Ref.), dated January 18, 2019. The order, insofar as appealed from, after a hearing, in effect, denied that branch of the father's petition which was for equal parental access for the parties.
ORDERED that the order is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof awarding the father parental access on alternating weekends from Thursday after school to Sunday at 6:30 p.m., with the father to pick up (or arrange for suitable adult pickup) from school and return to the mother's home, and substituting therefor a provision awarding the father parental access on alternating weekends from Thursday after school to Monday morning at start of school, with the father to pick up (or arrange for suitable adult pickup) from school and return to school; (2) by deleting the provision thereof awarding the father parental access with the child from Wednesday after school until Thursday morning on the weeks he does not have weekend visits, and substituting therefor a provision awarding the father parental access from Tuesday after school until Friday morning at start of school on those weeks, with the father to pick up (or arrange for suitable adult pickup) from school and return to school; (3) by deleting the provision thereof providing for the parties to alternate parental access with the child over the July 4th holiday; and (4) by adding a provision thereto directing that when either parent is unavailable to care for the child during his or her parental access, prior to making childcare arrangements with a nonparent, he or she shall first afford the other parent the opportunity to care for the child during such period; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
The mother and the father, who were never married to each other, are the parents of one child, born in May 2014. In July 2018, the father filed a petition pursuant to Family Court Act article 6, seeking joint legal custody of the child and equal parental access for the parties. In December 2018, the mother cross-petitioned, seeking sole custody of the child. After a hearing, by an order dated January 18, 2019, the Family Court awarded joint legal custody with physical custody [*2]to the mother, and set forth a parental access schedule for the father, which consisted of parental access on alternating weekends from Thursday after school until Sunday at 6:30 p.m., and for one mid-week overnight visit, from Wednesday after school until Thursday morning, on the weeks he does not have weekend visits, effectively denying that branch of the father's petition which was for equal parental access. The father appeals. We modify.
"The determination of parental access is within the sound discretion of the hearing court based upon the best interests of the child" (Matter of Cuccia-Terranova v Terranova, 174 AD3d 528, 529; see Matter of Fowler v Rivera, 134 AD3d 708, 709). "In determining those best interests, the court must evaluate the totality of the circumstances" (Matter of McQueen v Legette, 125 AD3d 863, 863; see Matter of Bongocan v Javier L., 159 AD3d 948, 949). Absent extraordinary circumstances, such as where parental access would be detrimental to the child's well-being, a noncustodial parent has a right to reasonable parental access privileges (see Pollack v Pollack, 56 AD3d 637, 638; Cervera v Bressler, 50 AD3d 837, 839). As the hearing court is able to observe witnesses and evaluate evidence firsthand, its determination is generally accorded great deference on appeal and should not be disturbed unless it lacks a sound and substantial basis in the record (see Matter of Fowler v Rivera, 134 AD3d at 709). However, in matters of child custody and parental access, this Court's authority is as broad as that of the hearing court (see Matter of Orellana v Orellana, 112 AD3d 720, 722; Matter of Brown v Zuzierla, 73 AD3d 765, 766).
The mother resides in Forest Hills in a two-bedroom apartment and works in Midtown Manhattan during regular business hours. The father resides primarily in a private home in Forest Hills but also owns an apartment on East 21st Street in Manhattan. He works for a real estate management company he co-owns with his brother. He generally works from home and occasionally travels to visit properties out of state. From the time of the child's birth, the parties had disagreements as to the amount of parental access the father should have with the child. While the parties disagree as to how and why their informal, pre-litigation access arrangements came to be, it is undisputed that the mother was the primary physical custodian of the child, with the father's parental access with the child increasing as the child grew older.
Prior to the 2019-2020 school year, the child attended a private nursery school for several hours weekday mornings and was involved in extracurricular activities. The maternal grandparents cared for the child many weekday afternoons, although the father contends that, because of his flexible work arrangements, he was willing and available to care for the child during those afternoons. The child was scheduled to attend public elementary school for the 2019-2020 school year.
The Family Court, in a determination that is not challenged here, awarded the parties joint legal custody, concluding that both parents were caring and appropriate caregivers for the child and that there was no reason why they could not work together in an amicable fashion to make decisions for the child. The court, however, found the father's request for an equal allocation of parental access with the child to be untenable, because he did not request such relief in his petition and, especially because, according to the court, the father had testified that he was planning to move away from Forest Hills and was purchasing a new residence in Harlem. The court ruled that the father's relocation would subject the child to a lengthy commute to and from school multiple times each week. This determination lacks a sound and substantial basis in the record.
The father, in his petition, explicitly requested an equal division of parental access. The father testified that he lives primarily in Forest Hills in a private home that he shares with his mother. However, he also testified that while he had owned an apartment on East 21st Street in Manhattan, he would only take the child there if she did not have school the following morning. The father also testified that he was in the process of purchasing a different apartment where he would live with his fiancée, but the Family Court precluded further inquiry into this purchase on the ground that it was speculative. During summation, the attorney for the child contended that the child would be subject to a long commute if the father relocated from Forest Hills and, during the course of the ensuing colloquy, the father stated that the new apartment was in Harlem.
The Family Court's determination that sharing parental access was untenable because the child would be subject to a lengthy commute from Harlem in order to attend school in Forest Hills is unsupported by the record. There was no testimony as to whether the father intended to use the prospective Harlem apartment as a place for the child to stay overnight on school nights and, to the contrary, the evidence in the record shows that the father did not have the child stay with him overnight in his previous Manhattan apartment on school nights; rather, they stayed at the home in Forest Hills. Further, there is no evidence that indicates where the child would be attending school once she entered the public school system.
The attorney for the child had argued that any overnight stays of the child with the father should be conditioned on the stays taking place in Forest Hills, as it was close to the child's school and the child was familiar with the location. The Family Court rejected that argument, stating that such an arrangement would be unfair to both the father and the child as they would be unable to have a "full-fledged home of their own" during the father's parental access. However, no such concern was voiced by the father, by the mother, or by the attorney for the child, even though the father had limited his overnight stays on school nights to the home in Forest Hills.
We conclude that the record supports the awarding of more parental access time to the father than the Family Court had allowed, although we do not agree with the father's contention that the parties' respective access to the child should be precisely equal.
Under all of the circumstances, including the history of the mother having primary residential custody of the child for the child's entire life, an appropriate regular parental access schedule should consist of: (a) the father having alternate weekends from Thursday after school to return to school on Monday morning and (b) on the weeks that the father does not have weekend visits, Tuesday after school until return to school Friday morning. This schedule, in our view, would foster the best interests of the child by permitting the continued development of a meaningful, nurturing relationship between the father and the child (see Matter of Sanders v Ballek, 136 AD3d 676, 677; Matter of Tabares v Tabares, 64 AD3d 661, 662), while also ensuring that the child has stability and routine during the school year.
Since the father has a flexible work schedule and has expressed a desire to care for the child during the periods when the mother is working, it would be in the best interests of the child for the mother, prior to arranging for a nonparent to care for the child during a work period, to first afford the father the opportunity to care for the child during that time (see Matter of Saravia v Godzieba, 120 AD3d 821, 822). Likewise, because there may be occasions due to the father's work or travel schedule that he may be unavailable to care for the child during his scheduled parental access, a similar requirement of notification to the mother should be imposed.
It is also appropriate to clarify an ambiguity that currently exists in the parental access schedule with respect to the parties' respective right to uninterrupted access with the child in July. To assure that there is no such interruption we eliminate the provision made by the Family Court for the parties to alternate the July 4th holiday. This modification ensures that the father has visitation with the child on the July 4th holiday in odd years and the mother has visitation with the child on that holiday in even years, as ordered by the court.
The father's contention that the Family Court denied his right to celebrate religious holidays with the child is without merit. The father failed to develop the record with respect to the religious holidays that he observes.
Accordingly, we modify the order as indicated to increase the frequency of the father's parental access and to clarify an apparent conflict in the existing parental access schedule.
SCHEINKMAN, P.J., AUSTIN, HINDS-RADIX and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court