Matter of Freeborn v Elco (2020 NY Slip Op 06259)





Matter of Freeborn v Elco


2020 NY Slip Op 06259


Decided on November 4, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 4, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

RUTH C. BALKIN, J.P.
JEFFREY A. COHEN
JOSEPH J. MALTESE
PAUL WOOTEN, JJ.


2019-11228
2019-11982
 (Docket Nos. V-1395-11/18E, V-879-11/18E & F)

[*1]In the Matter of Richard Freeborn, respondent,
v
Melissa Elco, appellant.


Law Offices of Hariri & Crispo, New York, NY (Ronald D. Hariri of counsel), for appellant.
Marina M. Martielli, East Quogue, NY, for respondent.
Mary Beth Daniels, Sound Beach, NY, attorney for the child.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 6, the mother appeals from (1) an order of the Family Court, Suffolk County (George F. Harkin, J.), dated August 29, 2019, and (2) an order of commitment of the same court dated September 20, 2019. The order dated August 29, 2019, insofar as appealed from, after a hearing, granted the father's petition to modify a prior order of custody and visitation of the same court (Bernard Cheng, J.) dated July 18, 2011, so as to award the father sole legal and physical custody of the subject child, with parental access to the mother, and found that the mother had willfully violated a prior order of the same court (George F. Harkin, J.) dated May 2, 2018. The order of commitment, inter alia, directed that the mother is committed to the custody of the Suffolk County Jail for a period of 90 days in the event she fails to comply with stated conditions.
ORDERED that the order of commitment dated September 20, 2019, is reversed, on the law, without costs or disbursements; and it is further,
ORDERED that the order dated August 29, 2019, is modified, on the law, on the facts, and in the exercise of discretion, by (1) deleting the provision thereof awarding the mother parental access on alternating weekends from Friday after school until Sunday evening at 6:00 P.M., and substituting therefor a provision awarding the mother parental access on alternating weekends from Friday after school, or at 6:00 P.M. on days when school is not in session, until Monday morning at school drop-off, or at 9:00 A.M. on days when school is not in session, and one overnight per week with the same pick-up and drop-off times, and (2) deleting the provision thereof finding that the mother willfully violated the order dated May 2, 2018; as so modified, the order dated August 29, 2019, is affirmed insofar as appealed from, without costs or disbursements.
The parties have one child in common and were never married to each other. In 2011, the parties entered into a stipulation, which was so-ordered by the Family Court on July 18, 2011, providing for joint legal custody of the child, with primary physical custody to the mother. In October 2017, the father filed a petition to modify the prior order so as to award him sole legal and [*2]physical custody of the child. Further, in August 2018, the father filed a petition alleging that the mother willfully violated an order dated May 2, 2018, directing the parties not to permit the mother's estranged husband, Michael Elco (hereinafter Michael), to have any contact with the child.
In an order dated August 29, 2019, made after a hearing, the Family Court, inter alia, granted the father's modification petition, awarding him sole legal and physical custody of the child, with parental access to the mother on alternating weekends from Friday after school until Sunday evening at 6:00 P.M. and on certain holidays, and found that the mother willfully violated the order dated May 2, 2018. In an order of commitment dated September 20, 2019, the court, among other things, directed that the mother is committed to the custody of the Suffolk County Jail for a period of 90 days in the event she fails to comply with stated conditions.
"Where parents enter into an agreement concerning custody, that agreement will not be modified unless there is a sufficient change in circumstances since the time of when the agreement was entered into, and unless modification of the custody arrangement is in the best interests of the child" (McAvoy v Hannigan, 107 AD3d 960, 962, citing Baker v Baker, 66 AD3d 722, 723). "In order to determine whether modification of a custody arrangement is in the best interests of the child, the court must weigh several factors of varying degrees of importance, including, inter alia, (1) the original placement of the child, (2) the length of that placement, (3) the child's desires, (4) the relative fitness of the parents, (5) the quality of the home environment, (6) the parental guidance given to the child, (7) the parent's financial status, (8) his or her ability to provide for the child's emotional and intellectual development, and (9) the willingness of the parent to assure meaningful contact between the child and the other parent" (Matter of Mingo v Belgrave, 69 AD3d 859, 859-860). "Since the Family Court's determination with respect to custody and visitation depends to a great extent upon its assessment of the credibility of the witnesses and upon the character, temperament, and sincerity of the parties, deference is accorded to its findings in this regard, and such findings will not be disturbed unless they lack a sound and substantial basis in the record" (Matter of Gangi v Sanfratello, 157 AD3d 677, 678).
Further, "joint custody is encouraged primarily as a voluntary alternative for relatively stable, amicable parents behaving in mature civilized fashion" (Braiman v Braiman, 44 NY2d 584, 589-590; see Matter of Gorniok v Zeledon-Mussio, 82 AD3d 767, 768). "However, joint custody is inappropriate where the parties are antagonistic towards each other and have demonstrated an inability to cooperate on matters concerning the child" (Matter of Gorniok v Zeledon-Mussio, 82 AD3d at 768 [internal quotation marks omitted]; see Matter of Gregoire v Yadram, 177 AD3d 616, 618; Hudson v Hudson, 163 AD3d 537, 539). Here, the record supports the Family Court's determination that the relationship between the parties had deteriorated to the extent that continuing the joint custody arrangement would be detrimental to the child (see Matter of Gorniok v Zeledon-Mussio, 82 AD3d at 768).
The record also supports the Family Court's determination to award sole legal and physical custody of the child to the father. "[O]ne of the primary responsibilities of a custodial parent is to assure meaningful contact between the children and the noncustodial parent, and the willingness of a parent to assure such meaningful contact between the children and the other parent is a factor to be considered in making a custody determination" (Matter of Vasquez v Ortiz, 77 AD3d 962, 962; see Matter of Khan-Soleil v Rashad, 111 AD3d 728, 729-730). "Interference with the relationship between a child and the noncustodial parent is an act so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as custodial parent" (Matter of Tori v Tori, 103 AD3d 654, 655). Here, the evidence established that the mother disparaged the father in the child's presence, refused to allow the father reasonable accommodations in exercising his parental access, and interfered with the father's ability to take part in important decisions in the child's life. Thus, we agree with the court's determination granting the father's petition to modify the prior custody order so as to award him sole legal and physical custody of the child.
However, we agree with the mother and the attorney for the child that the parental access schedule set forth by the Family Court was unsupported by the record. "'The determination [*3]of parental access is within the sound discretion of the hearing court based upon the best interests of the child'" (Matter of Yegnukian v Kogan, 179 AD3d 1082, 1083, quoting Matter of Cuccia-Terranova v Terranova, 174 AD3d 528, 529). "Absent extraordinary circumstances, such as where parental access would be detrimental to the child's well-being, a noncustodial parent has a right to reasonable parental access privileges" (Matter of Yegnukian v Kogan, 179 AD3d at 1083). Here, the child has a younger half-sister who lives with the mother, and with whom the child has lived since the half-sister's birth. The parental access schedule set forth by the court failed to sufficiently weigh the disruption that schedule would cause to the child's relationship with her half-sister (see Matter of Shannon J. v Aaron P., 111 AD3d 829, 831; cf. Matter of Jones v Leppert, 75 AD3d 552, 554). Further, increasing the mother's parental access would be consistent with the expressed interests of the child, who is now 13 years old. The child's preference, while not determinative, may be considered (see Matter of Newton v McFarlane, 174 AD3d 67, 75; Matter of Shannon J. v Aaron P., 111 AD3d at 831). Under the circumstances of this case, we find that it would be more appropriate for the mother to have parental access with the child on alternating weekends from Friday after school, or at 6:00 P.M. on days when school is not in session, until Monday morning at school drop-off, or at 9:00 A.M. on days when school is not in session, and one overnight per week with the same pick-up and drop-off times. This schedule would foster the best interests of the child by permitting the continued development of a meaningful relationship between the mother and the child, and between the child and her half-sister (see Matter of Yegnukian v Kogan, 179 AD3d at 1085).
Furthermore, we disagree with the Family Court's determination that the mother willfully violated the order dated May 2, 2018, directing the parties not to permit Michael to have any contact with the child. An application to punish a party for civil contempt "is addressed to the sound discretion of the court, and the movant bears the burden of proving the contempt by clear and convincing evidence" (Matter of Hughes v Kameneva, 96 AD3d 845, 846). "The movant must establish that: (1) a lawful order of the court, clearly expressing an unequivocal mandate, was in effect, (2) the order was disobeyed and the party disobeying the order had knowledge of its terms, and (3) the movant was prejudiced by the offending conduct" (Savel v Savel, 153 AD3d 872, 873; see Judiciary Law § 753[A][3]; El-Dehdan v El-Dehdan, 26 NY3d 19, 29). Here, the father failed to establish, by clear and convincing evidence, that the mother disobeyed the order dated May 2, 2018, by permitting Michael to contact the child on the child's personal cell phone, since there is no evidence that the mother was even aware of such contact.
The mother's remaining contention is without merit.
BALKIN, J.P., COHEN, MALTESE and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court