Matter of Haase v Jones (2024 NY Slip Op 04319)

Matter of Haase v Jones

2024 NY Slip Op 04319

Decided on August 28, 2024

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 28, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
PAUL WOOTEN
LOURDES M. VENTURA, JJ.

2023-02002
 (Docket No. V-6989-21)

[*1]In the Matter of Rohan Haase, appellant, 
v
Tiamoy Jones, respondent.

Hector L. Santiago, Kew Gardens, NY, for appellant.
Chinyere U. Eze-Nliam, Jamaica, NY, for respondent.
Wendy Pelle-Beer, Fresh Meadows, NY, attorney for the child.

DECISION & ORDER
In a proceeding pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Queens County (Mildred T. Negron, J.), dated February 9, 2023. The order, insofar as appealed from, after a hearing, in effect, denied that branch of the father's petition which was for sole legal and residential custody of the parties' child, awarded the mother sole legal and residential custody of the child, and granted that branch of the father's petition which was for parental access only to the extent of directing (1) that the father shall have parental access on alternating weekends from Friday after school until Sunday at 6:00 p.m., (2) that the father shall have a minimum of two weeks of exclusive parental access every year, (3) that the father shall have extra parental access during the summer months, as the parties arrange by email and/or text, (4) that the father shall be allowed one of the school midwinter or spring breaks every year on an alternating basis, with the parties to arrange the schedule, and (5) that the parties shall share holiday time with the child on consent, by email and/or text.
ORDERED that the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof granting that branch of the father's petition which was for parental access to the extent of directing (1) that the father shall have parental access on alternating weekends from Friday after school until Sunday at 6:00 p.m., (2) that the father shall have a minimum of two weeks of exclusive parental access every year, (3) that the father shall have extra parental access during the summer months, as the parties arrange by email and/or text, (4) that the father shall be allowed one of the school midwinter or spring breaks every year on an alternating basis, with the parties to arrange the schedule, and (5) that the parties shall share holiday time with the child on consent, by email and/or text, and substituting therefor a provision granting that branch of the father's petition which was for parental access to the extent of directing (1) that the father shall have parental access on alternating weekends from Friday after school, or from 3:30 p.m. on Fridays when school is not in session, until Monday morning at school drop-off, or until 9:00 a.m. Monday morning if school is not in session, and, following the weekends where the mother has parental access with the child, from Tuesday after school, or from 3:30 p.m. on Tuesdays when school is not in session, until Friday morning at school drop-off, or until 9:00 a.m. Friday morning if school is not in session, and (2) that each party shall have two weeks of continuous parental access every summer, unless the child is enrolled in summer school; as so modified, the order is affirmed insofar as [*2]appealed from, without costs or disbursements, and the matter is remitted to the Family Court, Queens County, for a new determination of a school holiday and vacation parental access schedule for the child in accordance herewith.
The mother and the father, who were never married, are the parents of a child born in 2017. Since the parties did not live together, they initially shared residential custody of the child through an informal arrangement. In March 2020, the parties had an argument. Shortly thereafter, the mother went to the father's home to drop off the child, then three years old, expecting to pick up the child within a few days. The father, however, subsequently refused to permit the mother to have parental access with the child. The mother made repeated overtures to the father through various means in an attempt to have in-person contact with the child, without success. During this period, the mother's only contact with the child was virtual via FaceTime, and such contact was initiated by either the mother or the child, without the father's involvement. In February 2021, the mother filed a petition for sole legal and residential custody of the child. On March 2, 2021, the Family Court issued a temporary order of access that included a schedule for the mother's parental access with the child. The mother then had in-person contact with the child for the first time in approximately one year. Thereafter, in June 2021, the father filed a petition for sole legal and residential custody of the child and parental access.
Over the course of seven days from October 2021 to December 2022, the Family Court conducted a hearing on both petitions. In a decision dated February 8, 2023, the court, inter alia, found "that the parties' relationship [was] of such a nature that an award of joint legal custody [was] not feasible" and that it was "in [the child's] best interest to award sole legal and residential custody to [the] mother." The court further concluded that the father was entitled to parental access with the child. In an order dated February 9, 2023, the court, in effect, denied that branch of the father's petition which was for sole legal and residential custody of the child, awarded the mother sole legal and residential custody of the child, and granted that branch of the father's petition which was for parental access to the extent of directing (1) that the father shall have parental access on alternating weekends from Friday after school until Sunday at 6:00 p.m., (2) that the father shall have a minimum of two weeks of exclusive parental access every year, (3) that the father shall have extra parental access during the summer months, as the parties arrange by email and/or text, (4) that the father shall be allowed one of the school midwinter or spring breaks every year on an alternating basis, with the parties to arrange the schedule, and (5) that the parties shall share holiday time with the child on consent, by email and/or text. The father appeals.
"The paramount concern in matters of custody and parental access is the best interests of the child under the totality of the circumstances" (Matter of Mazo v Volpert, 223 AD3d 907, 908-909 [internal quotation marks omitted]). "In determining the child's best interests, the court must consider, among other things, (1) which alternative will best promote stability; (2) the available home environments; (3) the past performance of each parent; (4) each parent's relative fitness, including his or her ability to guide the child, provide for the child's overall well[-]being, and foster the child's relationship with the noncustodial parent; and (5) the child's desires" (Matter of Upia-Parham v Parham, 222 AD3d 988, 988-989 [internal quotation marks omitted]). "[T]he existence or absence of any one factor," however, is not "determinative," since custody and parental access determinations must be made based on the "totality of the circumstances" (Matter of Sajid v Berrios-Sajid, 73 AD3d 1186, 1187 [internal quotation marks omitted]). "In reviewing [such] determinations, this Court's authority is as broad as that of the hearing court. However, since the Family Court's determination depends to a great extent upon its assessment of, among other things, the credibility of the witnesses, the court's determination should not be disturbed unless it lacks a sound and substantial basis in the record" (Matter of Kim v Becker, 223 AD3d 813, 815 [citation and internal quotation marks omitted]; see Matter of Donkor v Donkor, 198 AD3d 892, 893).
Initially, contrary to the father's contention, the Family Court's conclusion that joint custody was not appropriate under the circumstances has a sound and substantial basis in the record. "Joint custody is encouraged as a voluntary alternative for relatively stable, amicable parents behaving in mature civilized fashion. However, joint custody is inappropriate where the parties are antagonistic towards each other and have demonstrated an inability to cooperate on matters [*3]concerning the child" (Matter of Martinez v Gaddy, 223 AD3d 816, 818 [internal quotation marks omitted]; see Matter of Gold v Khalifa, 223 AD3d 803, 804; Franklin v Franklin, 199 AD3d 758, 759). Here, even though the parties cooperated on matters relating to the child for the first few years of her life, the record demonstrates, among other things, that their relationship deteriorated following the March 2020 argument. Thereafter, the father repeatedly failed to respond to the mother's attempts to discuss matters relating to the child. Although the mother testified that the parties' ability to communicate had improved somewhat by the time of the hearing, the father testified, inter alia, that he had no desire to confer with the mother "on any major issues concerning the child." Since the record establishes that the nature of the parties' relationship effectively precluded joint decision-making, there is no basis to disturb the court's determination that joint custody was inappropriate (see Matter of Martinez v Gaddy, 223 AD3d at 815; Matter of Robinson v Mustakas, 214 AD3d 880, 881; cf. Matter of Bristow v Patrice, 221 AD3d 684, 685-686).
Nor did the Family Court err in awarding the mother sole legal and residential custody of the child. "[A] child's best interests generally lie in her or him being nurtured and guided by both natural parents" (Matter of Luke v Erskine, 222 AD3d 868, 870 [alterations and internal quotation marks omitted]). "Parental alienation of a child from the other parent, including willful interference with his or her parental access rights, is an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent" (Matter of Burke v Squires, 202 AD3d 784, 785-786 [alterations and internal quotation marks omitted]). Here, the father refused to permit the mother to have parental access with the child for approximately one year, from March 2020 until the court intervened in March 2021. The father's purported concerns relating to the COVID-19 pandemic did not justify his decision to unilaterally prevent the mother and the child from having in-person contact with one another for approximately one year. In any event, the father's contention on appeal that his decision was influenced heavily by the pandemic is belied by the record. He repeatedly testified that he was motivated primarily by his frustration with the mother's alleged failure to adhere to the parties' informal parental access schedule. While he also mentioned the pandemic as a factor, the father conceded that it was no longer a concern for him by late May 2020. The father's actions therefore raised a strong inference that he was unfit to act as the custodial parent (see Matter of Luke v Erskine, 222 AD3d at 871; Matter of Burke v Squires, 202 AD3d at 785-786).
Nonetheless, "a finding of parental interference or alienation" only constitutes "one fact, albeit an important one, in determining the best interests of the child" (Matter of Luke v Erskine, 222 AD3d at 871 [internal quotation marks omitted]). This matter therefore cannot be decided solely based upon the father's interference with the mother's parental rights, and other factors must be considered. The record demonstrates, for example, that both the mother and the father were able to provide adequate care for the child, and neither party had significant concerns with the other's parenting abilities. But the evidence also established that the father made educational and medical decisions for the child without consulting with the mother (see Matter of Graffagnino v Esposito, 223 AD3d 805, 807-808; Matter of Martinez v Gaddy, 223 AD3d at 818). Further, the parties' testimony showed that the mother "was more willing than the [father] to assure meaningful contact between the child" and the other parent (Matter of Kim v Becker, 223 AD3d at 815). Considering the totality of circumstances (see Matter of Sajid v Berrios-Sajid, 73 AD3d at 1187), the Family Court's determination to award the mother sole legal and residential custody of the child is supported by a sound and substantial basis in the record and will not be disturbed.
However, we disagree with the Family Court's parental access schedule. Although "the child's best interests generally lie in her or him being nurtured and guided by both natural parents" (Matter of Luke v Erskine, 222 AD3d at 870 [alterations and internal quotation marks omitted], "that presumption may be rebutted through a showing, by a preponderance of the evidence, that parental access would be harmful to the child" (Matter of Mazo v Volpert, 223 AD3d at 909 [internal quotation marks omitted]). Here, however, the record does not demonstrate that the child would be harmed by spending more time with the father, or with his family, nor has the mother or the attorney for the child asserted otherwise. "Parental access is a joint right of the noncustodial parent and of the child" (Matter of Cuccia-Terranova v Terranova, 174 AD3d 528, 529 [internal quotation marks omitted]). "[I]n order for the noncustodial parent to develop a meaningful, [*4]nurturing relationship with the child, parental access must be frequent and regular" (Matter of Luke v Erskine, 222 AD3d at 870 [internal quotation marks omitted]). Therefore, absent extenuating circumstances, a court should establish a "parenting time schedule which ensure[s] that both the mother and the father . . . have [significant] quality time with the child when [he or] she is not in school" (Matter of Gibson v Greene, 152 AD3d 592, 593; see Matter of Kim v Becker, 223 AD3d at 815). In this case, the court only awarded the father regular parental access with the child on alternating weekends from Friday after school until Sunday at 6:00 p.m., with no regular weekday parental access, even though the parties apparently live less than a half-hour from one another. We conclude that the father's parental access schedule, as determined by the court, "effectively deprives [him] of significant quality time with the child" (Matter of Kim v Becker, 223 AD3d at 815).
Under the circumstances, we conclude that an appropriate regular parental access schedule should consist of the father having alternate weekends from Friday after school, or from 3:30 p.m. on Fridays when school is not in session, until Monday morning at school drop-off, or until 9:00 a.m. Monday morning if school is not in session, and, following the weekends where the mother has parental access with the child, from Tuesday after school, or from 3:30 p.m. on Tuesdays when school is not in session, until Friday morning at school drop-off, or until 9:00 a.m. Friday morning if school is not in session (see id. at 816; Matter of Yegnukian v Kogan, 179 AD3d 1082, 1085; R.K. v R.G., 169 AD3d 892, 894-895). "This schedule, in our view, would foster the best interests of the child by permitting the continued development of a meaningful, nurturing relationship between the father and the child, while also ensuring that the child has stability and routine during the school year" (Matter of Yegnukian v Kogan, 179 AD3d at 1085 [citations omitted]).
In addition, we agree with the father that the Family Court should have set forth a more precise parental access schedule for school holiday and vacation time (see Matter of Gregoire v Yadram, 177 AD3d 616, 619; R.K. v R.G., 169 AD3d at 895; Matter of Grunwald v Grunwald, 108 AD3d 537, 540), particularly considering the court's recognition that it could not "leave it up to the parties to arrange the parental access schedule themselves" (see Gillis v Gillis, 113 AD3d 816, 817; Matter of Rivera v Fowler, 112 AD3d 835, 836). For example, under the circumstances, the court should not have directed that the father would have a minimum of two weeks of exclusive parental access every year, as well as extra parental access during the summer months, as the parties arrange by email and/or text. Similarly, the court should not have directed the parties to arrange the parental access schedule for the child's winter and spring vacation time from school, or to share holiday time with the child on consent, by email and/or text. In light of our determination regarding the father's expanded regular parental access schedule, we conclude that each party shall have two weeks of continuous parental access every summer, unless the child is enrolled in summer school, on dates to be determined by the court (see Matter of Krubally v Jobe, 161 AD3d 1076, 1077; Matter of McDaniel v McDaniel, 140 AD3d 1167, 1168; cf. Matter of Marino v Sanfilippo, 190 AD3d 974, 976). The parties shall also share the child's school holiday time equally (see Matter of Smisek v DeSantis, 209 AD3d 142, 144; Goikhman v Biton, 183 AD3d 704, 705; Gillis v Gillis, 113 AD3d at 817). Accordingly, we remit the matter to the Family Court, Queens County, to set forth a clear and unambiguous school holiday and vacation parental access schedule consistent herewith, including by specifying the exact times and dates thereof (see Gillis v Gillis, 113 AD3d at 817; Matter of Rivera v Fowler, 112 AD3d at 836).
DILLON, J.P., CHAMBERS, WOOTEN and VENTURA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court